2026 IL App (3d) 260014

Opinion filed July 28, 2026
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| STEVE ROAKE, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-26-0014 |
| | ) | Circuit No. 23-CH-27 |
| S. MARK WHITTINGTON, JEFF JEWELL, | ) | |
| JOHN BARNAK III, and NEXT REALTY | ) | Honorable |
| AGE, LLC, d/b/a Inspire Realty | ) | Jennifer L. Barron, |
| Partners, a Corporation, | ) | Judge, presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Next Realty Age, LLC, | ) | |
| | ) | |
| Defendant-Appellant). | ) | |
_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justices Holdridge and Brennan concurred in the judgment.
_____

**OPINION**

¶ 1     In July 2025, plaintiff Steve Roake filed a third amended complaint in the Du Page County Circuit Court against Next Realty Age, LLC, d/b/a Inspire Realty Partners (Company), and three individual members of the Company. Roake raised three claims under the Limited Liability Company Act (Act) (805 ILCS 180/1-1 *et seq.* (West 2024)). The Company moved to dismiss the

third amended complaint and to compel arbitration, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2024)). The circuit court denied the motion to dismiss and compel arbitration, finding that the claims fell outside the scope of the arbitration clause of the parties' operating agreement. The Company appeals. We reverse the denial of the motion to dismiss and to compel arbitration.

¶ 2                                    I. BACKGROUND

¶ 3        The Company is an Illinois limited liability company in Du Page County. The Company was formed in March 2012 and involuntarily dissolved by the Illinois Secretary of State in September 2021. Individual defendants John Barnack III, S. Mark Whittington, and Jeff Jewell all have a membership interest in the Company. Barnack is the Company's manager, and Whittington and Jewell are both officers of the Company. Roake has a 15% membership interest in the Company. The Company was formed to provide real estate services and related back-office operational support. During Roake's tenure as a 15% membership interest owner, Roake contributed both services and capital to the Company, including a $7,000 contribution in 2014.

¶ 4        In his third amended complaint, Roake brought three claims under the Act (805 ILCS 180/15-7(a), 10-15(j), 15-3 (West 2024)). Count one alleges the defendants violated section 15-7(a) (*id.* § 15-7(a)) by failing to reimburse Roake for a $7,000 advance made to the Company. Count two alleges a violation of section 10-15(j) (*id.* § 10-15(j)) by withholding or denying requested company records concerning the Company's activities, financial conditions, and other circumstances of the Company's business.

¶ 5        Count three alleges a breach of fiduciary duty under section 15-3 (*id.* § 15-3), brought derivatively on behalf of the Company, seeking relief for injuries done to the Company because the Company either cannot or will not assert its own rights. Roake further alleges that the

2

individual defendants appropriated the Company's goodwill and resources and used the Company's name, or confusingly similar variations thereof, to conduct competing real estate business activities for their own benefit and the benefit of other brokerages. For relief, Roake requested damages, an accounting, the return of Company property, and other equitable remedies that the court deemed appropriate for defendants' alleged breaches of fiduciary duty.

¶ 6 In September 2025, the Company filed a motion to dismiss and compel arbitration, pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2024)). The Company alleged that Roake's claims arose under the operating agreement and were therefore subject to mandatory arbitration.

¶ 7 The arbitration clause in dispute is set forth in paragraph 13.11 of the operating agreement, effective as of May 15, 2012, which states:

"13.11 Arbitration. With respect to any controversy or claim that arises under the terms of this Agreement and that is not resolved through negotiation, the Company and each Member agree to seek resolution of such controversy or claim through arbitration in DuPage County, Illinois, in accordance with the current Commercial Arbitration Rules of the American Arbitration Association [(AAA)], and judgment on the award entered by the arbitrator(s)."

¶ 8 Following a hearing, the circuit court denied the motion to dismiss and to compel arbitration. The court found that Roake's three claims arose under the Act and, "[b]ut for the provisions of the LLC Act," none of Roake's claims would be available under the terms of the operating agreement. Citing *Keely & Sons, Inc. v. Zurich American Insurance Co.*, 409 Ill. App. 3d 515 (2011), the circuit court concluded that the arbitration provision at issue was narrow in scope, applying only to controversies or claims arising "under the terms" of the operating

3

agreement. The circuit court found that, because Roake's three claims were statutory and did not allege a breach of the operating agreement, Roake's claims fell outside the scope of the arbitration provision, and arbitration was not mandated. The Company filed a timely notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10        A motion to compel arbitration is properly brought under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2024)), as an agreement to arbitrate constitutes an affirmative matter defeating the action. *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶¶ 39-40. The party seeking to compel arbitration bears the burden of establishing the existence of a valid arbitration agreement and showing the dispute falls within its scope. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1102 (2009). Courts favor arbitration as an effective, cost-efficient, and expeditious method of dispute resolution. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). Because the lower court's ruling requires interpretation of the parties' arbitration agreement, our review is *de novo*. *Brown v. Delfre*, 2012 IL App (2d) 111086, ¶ 11.

¶ 11        The Company raises two issues on appeal: (A) whether the United States Arbitration Act, commonly known as the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2024)), or alternatively the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2024)), governs the parties' arbitration agreement where the arbitration clause does not specify a governing arbitration statute and (B) whether the circuit court erred in determining the arbitrability of Roake's claims. As to the second issue, the Company raises the questions of whether (1) the arbitration provision requiring arbitration of any controversy or claim that "arises under the terms of this agreement" encompasses the statutory claims asserted in Roake's third amended complaint and (2) incorporation of the Commercial Arbitration Rules of the American Arbitration Association

4

(AAA) into the arbitration clause of the operating agreement demonstrated the parties' intent to have the arbitrator determine the arbitrability.

¶ 12                    A. Whether the FAA or Uniform Arbitration Act Applies

¶ 13    We first address the Company's argument that the FAA controls the present dispute. The operating agreement is silent as to whether the FAA or the Uniform Arbitration Act controls the arbitration agreement. In its initial brief, the Company argues that the FAA controls but fails to identify any transactions involving interstate commerce. In that vein, Roake disputes the application of the FAA, arguing there is no indication of any transaction involving interstate commerce. The FAA was enacted pursuant to the commerce clause (U.S. Const. art. I, § 8, cl. 3). *R.A. Bright Construction, Inc. v. Weis Builders, Inc.*, 402 Ill. App. 3d 248, 250 (2010) (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)). Because the applicability of the FAA depends on a tie to interstate commerce, and no such tie is demonstrated or apparent, we apply the Uniform Arbitration Act. See *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 726 (2006) (applying Uniform Arbitration Act because no interstate commerce apparent); see also *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 563 (1997) ("In the absence of an agreement to the contrary, arbitration proceedings in Illinois are governed by the terms of the Uniform Arbitration Act.").

¶ 14                         B. Who Determines Arbitrability

¶ 15    The Company also argues that the trial court erred in not sending the matter to the arbitrator because Roake's claims clearly arise within the scope of the operating agreement and/or incorporation of the AAA rules into the arbitration clause delegated arbitrability to the arbitrators. Roake counters that the claims clearly do not arise from the operating agreement and there is no

5

"clear and unmistakable" evidence that the parties agreed to have the arbitrator determine arbitrability.

¶ 16     While there is a presumption of arbitrability, arbitration remains a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Monmouth Public Schools, District No. 38 v. Pullen*, 141 Ill. App. 3d 60, 64 (1985). When analyzing an arbitrability claim under the Uniform Arbitration Act, courts recognize three alternative situations. First, "[w]here the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitrability issue and compel arbitration." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988). Second, "if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate." *Id*. Third, where the parties disagree as to arbitrability and " 'the question of the parties' intention as to such scope is reasonably debatable,' " " 'the rule [is that] the issue of arbitrability be initially determined by the arbitrators.' " (Emphasis omitted.) *Id.* at 447 (quoting *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 123 N.W.2d 371, 376-77 (Minn. 1963)).

¶ 17     It is not unlike the completion of a fourth-down play in football. The referee spots the ball, and if it is obviously well beyond the line to gain, the referee signals a first down. If it is obviously short, the referee signals that the ball is turned over on downs. But if it is too close to call by eyesight alone, the field referee defers to the chain crew. The chains come onto the field, and the chain crew's measurement determines the issue. *Donaldson* adopts a similar approach. In a case controlled by the Uniform Arbitration Act, courts decide the obvious cases. When arbitrability is

reasonably debatable, however, the parties' chosen decision-maker—the arbitrator—makes the measurement.

¶ 18        In this case, the scope of the arbitration clause is reasonably debatable. The arbitration clause provides that "any controversy or claim that arises under the terms" of the operating agreement be resolved through arbitration. Roake brings three claims against the Company alleging violations of the Act. Roake does not directly allege a breach of the operating agreement. On the other hand, the Act is incorporated into the operating agreement. For example, the operating agreement provides that the Company may "do all things permitted by the Act necessary or appropriate" for its stated purpose. Further, the operating agreement provides that "[t]he Company shall possess and may exercise all powers and privileges granted by the Act." In relation to Roake's claims, Roake raises a statutory claim for return of capital. The operating agreement provides that "[a]ny return of capital to the Members shall be solely from Company assets, and the Members shall not be personally liable for any such return except as provided in the Act." The operating agreement further provides that any manager shall be liable to the Company or any other member for damages attributable to a breach of any manager "except to the extent (a) required under the Act." In light of the incorporation of the Uniform Arbitration Act into the operating agreement, whether Roake's claims are within the scope of the arbitration clause is reasonably debatable and must be decided by the arbitrator.

¶ 19        In reaching this conclusion, we reject Roake's suggestion that the narrower arbitration clause makes the question of arbitrability an easy one. While Illinois courts have distinguished between broad and narrow contractual arbitration provisions (see *Stearns v. Newby*, 2024 IL App (5th) 240677-U, ¶¶ 20-21), this broad-narrow dichotomy takes into account only one side of the equation (*i.e.*, the contractual language). It does not take into account the facts and circumstances

of the dispute. A host of contractual disagreements can still fall within the ambit of a narrow arbitration clause.

¶ 20    We also note that, here, the arbitration agreement incorporates the AAA rules. Specifically, it incorporates *all* the AAA rules, including those governing the determination of arbitrability. Rule R-1(a) of the AAA provides "[t]he parties shall be deemed to have made [the AAA rules] a part of their arbitration agreement whenever they have provided for arbitration by the [AAA]." Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures* 10 (2022), https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf [https://perma.cc/WN86-LMXT]. The AAA rules authorize the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *Id*. at 14.

¶ 21    Courts find that the incorporation of an institution's rules in an arbitration agreement, such as the AAA, is sufficient evidence that the parties intended to delegate the question of arbitrability to an arbitrator. See *Rotan v. Unlimited Development, Inc.*, 2023 IL App (5th) 220182-U, ¶ 27; *LRN Holding, Inc. v. Windlake Capital Advisors, LLC*, 409 Ill. App. 3d 1025, 1037 (2011) (Wright, J., specially concurring); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720-721 (N.D. Ill. 2014); see also *Huberman v. McDermott Will & Emery LLP*, 2025 IL App (1st) 241212-U, ¶ 27 (finding incorporation of institution's rules in the arbitration agreement that provided arbitrator's authority was clear and unmistakable delegation of arbitrability to the arbitrator). We acknowledge that while these authorities were governed by the FAA, both the FAA and Uniform Arbitration Act allow the parties to agree to submit the question

of arbitrability itself to arbitration. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995); *Salsitz*, 198 Ill. 2d at 14; see also *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.*, 78 Ill. 2d 56, 59 (1979) (although federal cases are not binding they may be persuasive when similar statutes are addressed). These authorities are persuasive, and the inclusion of the AAA in the arbitration agreement establishes a clear and unmistakable delegation of arbitrability to the arbitrator.

¶ 22       Because the Uniform Arbitration Act and operating agreement are intertwined, we find it is unclear whether Roake's statutory claims arise only by statute, out of the operating agreement, or under a combination of the two. We express no opinion regarding whether the claims ultimately arise under the operating agreement. We conclude only that the answer is sufficiently uncertain that the arbitrator must decide that issue. In other words, because it is unclear whether they arise from the operating agreement and fall within the arbitration agreement, the arbitrator is required to determine arbitrability. See *Donaldson*, 124 Ill. 2d at 451. Further, and independently, the incorporation of the AAA Rules into the arbitration agreement demonstrates the parties' intent to defer arbitrability to the arbitrator.

¶ 23                                          III. CONCLUSION

¶ 24       The judgment of the circuit court of Du Page County is reversed.

¶ 25       Reversed.

*Roake v. Whittington*, 2026 IL App (3d) 260014

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 23-CH-27; the Hon. Jennifer L. Barron, Judge, presiding. |
| **Attorneys for Appellant:** | Joyce Lewis Wixson, of Hinsdale, for appellant. |
| **Attorneys for Appellee:** | Carmen A. Gaspero, of Gaspero & Gaspero, Attorneys at Law, P.C., of Downers Grove, for appellee. |